UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.M.V., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01381-KES-SAB (HC) <br><br> ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION <br><br> Doc. 2 |

Petitioner F.M.V. is an asylum-seeker from Colombia who entered the United States in November 2023. After entry, he was initially detained by immigration officials but was then released pending his removal proceedings after they determined that he was neither a danger nor a flight risk. Since then, he has lived with his family in Denver and San Jose, gained lawful employment, sought relief in his immigration case, and maintained a clean criminal record. On September 26, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner when he appeared for a scheduled check-in.

On October 16, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

1

motion for a temporary restraining order, in which he seeks his immediate release from detention and an injunction prohibiting the government from re-detaining him unless it first provides him with a hearing before a neutral adjudicator, Doc. 2.[1]  Respondents filed an opposition on October 22, 2025, Doc. 11, and petitioner filed a reply on October 26, 2025, Doc. 13.[2]  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

**I.    Background**[3]

Petitioner and his family fled Colombia to pursue asylum.  Doc. 1 at ¶¶ 6, 16.  On October 27, 2023, he and his wife, daughter, and stepson crossed the southern border.  *Id.* ¶ 6.  The next day, they were encountered by U.S. immigration officials near Tecate, California and detained.  *Id.* ¶ 6; *see* Doc. 11-1, Martinez Decl. at ¶ 6.  On November 1, 2023, the immigration officials issued petitioner a notice to appear for removal proceedings pursuant to 8 U.S.C. § 1229a.  Doc. 1 at ¶ 7; Doc. 11-1, Martinez Decl. at ¶ 7.  Immigration officials made a custody determination pursuant to 8 U.S.C. § 1226(a) and decided that petitioner would be released on his own recognizance pending those removal proceedings.  Doc. 1 at ¶ 7; Doc. 11-1, Martinez Decl. at ¶ 7.  The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v.*

---

[1] Petitioner also filed a motion to proceed under pseudonym, which was granted by separate order.

[2] Petitioner's reply was filed two days after the Court-imposed deadline of October 24, 2025.  *See* Doc. 6.  Petitioner also filed a motion for extension of time, noting that the failure to file the reply on October 24, 2025 was due to counsel's calendaring error.  Doc. 12.  For good cause shown, the motion for extension of time is granted.

[3] Some of the facts recited here are drawn from petitioner's verified petition for writ of habeas corpus.  A court "may treat the allegations of a verified . . . petition as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1  *Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v.*
2  *Sessions*, 905 F.3d 1137 (9th Cir. 2018).

3        Following his release from detention on November 1, 2023, petitioner headed to Denver,
4  Colorado with his family. Doc. 1 at ¶¶ 7–8, 10. Immigration officials instructed petitioner to
5  report to the ICE office in Denver upon his arrival, which he did. *Id.* ¶ 8. During his appointment
6  at the ICE office, ICE informed him that he would be monitored through a phone monitoring
7  application as part of the Intensive Supervision Appearance Program ("ISAP"); he was required
8  to take a photo of himself every week, and he was subject to home visits by ICE agents. *Id.*
9  Petitioner complied with these phone monitoring and home visit requirements. Doc. 1 at ¶ 9;
10  Doc. 11-1, Martinez Decl.

11        Petitioner and his family lived in Denver for a year and a half. Doc. 1 at ¶ 9. While there,
12  petitioner sought relief in his removal proceedings by filing an application for asylum and
13  withholding of removal. *Id.* Although he eventually became separated from his wife, petitioner
14  indicates that he remained an attentive father to his daughter. *Id.* ¶ 15. Petitioner maintained a
15  clean criminal record. *Id.* ¶ 16.

16        After completing his employment authorization document, petitioner was hired for a job
17  in California, and he decided to move there to live with his cousin. *See id.* ¶¶ 12, 15. Petitioner
18  indicates that he shared his plans and his intended California address with the ISAP officer
19  assigned to his case. *Id.* ¶ 12. Petitioner states that the ISAP officer told him that he would need
20  to present himself at the ISAP office in San Jose, California on July 8, 2025, but that the officer
21  sent that message to him only on July 12, 2025. *Id.* When petitioner inquired about this
22  discrepancy, the ISAP officer did not respond to his inquiries. *Id.* The declaration of deportation
23  officer Daniel Martinez states that petitioner violated the terms of his release by failing to report
24  to the ISAP office in San Jose on the required date and by notifying ISAP of his move to
25  California only after he was already on his way. Doc. 11-1, Martinez Decl. at ¶ 8. As noted,
26  petitioner appears to dispute this claim, indicating that he could not have known to report to the
27  San Jose ISAP office on July 8, 2025, as he was only instructed on July 12, 2025 to do so. Doc. 1
28  at ¶¶ 9, 12, 26.

1    Petitioner asserts that he complied with all terms of his release, and that after he received
2    calls from ICE asking why he was in California, ICE told him everything was okay and that he
3    should continue to report through the phone application. *Id.* Petitioner requested to reschedule
4    the July 8, 2025 appointment date to change his address formally, and he successfully requested a
5    change of venue to the San Francisco Immigration Court. *See id.* ¶¶ 13, 16. Petitioner thereafter
6    became lawfully employed as a truck driver pursuant to a valid work authorization. *See id.* ¶¶ 15,
7    60; Doc. 1-3 at 1 (letter of support from his employer).

   On September 24, 2025, ICE told petitioner to present himself at their office the next day,
which petitioner believed was his opportunity to formally change his address. *Id.* On
September 25, 2025, he reported in person as instructed, and ICE agents placed an ankle monitor
on him and instructed him to return the next day to change his address. *Id.* On September 26,
2025, when petitioner reported in person as instructed, ICE agents arrested him. *Id.* After
detaining him in a holding cell at the San Francisco ICE office for one day, ICE agents
transported him to Mesa Verde ICE Processing Center, a detention facility in Bakersfield,
California, where he remains detained. *Id.* ¶¶ 17–23.

   On October 15, 2025, petitioner had his first master calendar hearing, where he requested
his release on bond. *Id.* ¶ 25. The immigration judge found that she did not have jurisdiction to
adjudicate his request. *See id.* ¶ 25; Doc. 11-1, Martinez Decl. at ¶¶ 9–10. Petitioner reports that
his detention caused him to miss a custody hearing for his daughter and that a child support order
was issued against him. *Id.* ¶¶ 15, 24. While he intends to comply with the child support order,
he is concerned about missing payments due to his inability to work while detained. *Id.*

**II.    Conversion to a Motion for Preliminary Injunction**

   When the Court set a briefing schedule on the motion, it ordered the parties to state their
position on whether the motion for temporary restraining order should be converted to a motion
for preliminary injunction and whether the parties requested a hearing on the motion. Doc. 6.
Neither party objected to converting the motion, and both parties waived oral argument. *See* Doc.
11 at 1; Doc. 13 at 5. Given that the standard for issuing a temporary restraining order and
preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d

4

1  832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in

2  opposition, *see* Doc. 11, petitioner's motion is converted to a motion for preliminary injunction.

3  **III.     Legal Standard**

4  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

5  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

6  90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to

7  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

8  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

9  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

10 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of

11 success on the merits is a threshold inquiry and is the most important factor." *Simon v. City &*

12 *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

13 *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious

14 questions going to the merits—a lesser showing than likelihood of success on the merits—then a

15 preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

16 favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767

17 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

18 **IV.     Discussion**

19 **a.  Petitioner is Likely to Succeed on the Merits.**

20 Because civil immigration detention is typically justified only when a noncitizen presents

21 a risk of flight or danger to the community, see *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001),

22 *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), petitioner argues that the Due

23 Process Clause bars the government from re-detaining him without first providing a hearing

24 where it must prove he is a flight risk or danger. Doc. 2 at 13–23. Petitioner's due process claim

25 is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the

26 Due Process Clause, and the second examines the procedures necessary to ensure any deprivation

27 of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-

28 01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

*Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Immigration officials' release of petitioner on his own recognizance pending his immigration proceedings was similar. Among other things, it allowed him to live with his family in Denver and San Jose, care for his daughter, become gainfully employed, and seek relief in his removal proceedings.[4]

---

[4] The declaration of deportation officer Daniel Martinez states that petitioner failed to inform ICE of his move to California in a timely manner and missed an in-person appointment, Doc. 11-1,

6

Respondents argue that the government's prior release of petitioner pursuant to 8 U.S.C. § 1226 should not prevent them from re-evaluating that decision and subjecting petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 11 at 2. The government argues that section 1225(b)(2)(A) applies because petitioner is an "applicant for admission." That argument is unpersuasive, for the reasons set forth in *Guerrero Lepe v. Andrews, et al.*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *1 (E.D. Cal. Sept. 23, 2025). Moreover, even if respondents were correct that § 1225(b)(2)(A) could apply to petitioner, the government previously represented to petitioner that his release was pursuant to 8 U.S.C. § 1226(a). *See id.* (conceding that his prior release was pursuant to this provision). Pursuant to § 1226, petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

Petitioner's prior release pursuant to 8 U.S.C. § 1226(a) thus created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk or danger. *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017); *see Johnson v. Williford*, 682 F.2d 868, 873 & n.3 (9th Cir. 1982) (holding that it would be "inconsistent with fundamental principles of liberty and justice" to re-incarcerate a mistakenly released prisoner who had readjusted to society and complied with the terms of

---

Martinez Decl. at ¶ 8, while petitioner asserts that he complied with all release terms, Doc. 1 at ¶¶ 9, 12, 26. It is not necessary to resolve this factual dispute in this action, particularly as respondents do not argue that petitioner's detention is justified for this reason. *See* Doc. 11 at 1–2. The issue here is whether the Due Process Clause requires a hearing before a neutral arbiter who will determine whether there are any changed circumstances warranting petitioner's re-detention.

7

release).  Thus, the argument that "a mistakenly released [person] does not have a legitimate claim of entitlement to freedom [under the Due Process Clause] . . . cannot be squared with established law."  *Hurd*, 864 F.3d at 682.  Even if § 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to him that his release was pursuant to § 1226 and the nearly two years he spent at liberty while relying on that representation.

The Court finds that petitioner has a protected liberty interest in his release.  *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).  The Court must therefore determine what process is due before the government may terminate his liberty.

## 2.  A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for nearly two

8

years, and during that time, lived with his family and gained lawful employment. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. *See* Doc. 1 at ¶¶ 8, 25, 57. Although the declaration of deportation officer Daniel Martinez states that petitioner failed to inform ICE of his move to California in a timely manner and missed an in-person appointment, Doc. 11-1, Martinez Decl. at ¶ 8, petitioner asserts that he complied with all release terms, Doc. 1 at ¶¶ 9, 12, 26. No neutral arbiter has determined whether the facts show that petitioner is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings . . . and [] does not have a criminal record." *Pinchi*, 2025 WL 1853763, at *2.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

9

1  kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has
2  held that Due Process requires a pre-deprivation hearing before those released on parole from a
3  criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The
4  same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.
5  Numerous district courts have held that these principles extend to the context of immigration
6  detention. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at
7  *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-
8  05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at
9  970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2
10 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4
11 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4
12 (N.D. Cal. Aug. 23, 2020). Given the absence of "evidence of urgent concerns," the Court
13 concludes that "a *pre*-deprivation hearing [was] required to satisfy due process." *Guillermo M.*
14 *R.*, 2025 WL 1983677, at *9.

15   With these considerations in mind, petitioner is likely to succeed on the merits.

16   **b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

17   Turning to the second *Winter* factor, "[i]t is well established that the deprivation of
18 constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994
19 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged
20 deprivation of a constitutional right is involved, most courts hold that no further showing of
21 irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)
22 (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given
23 the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his
24 detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable
25 harm absent a preliminary injunction.

26   **c. Balance of Equities and Public Interest**

27   When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird*
28 *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the

1  government has a strong interest in enforcing the immigration laws, the issue in this case is not
2  whether the government can detain petitioner at all, but whether it can detain petitioner *without a*
3  *bond hearing*.  Faced with a choice "between [this minimally costly procedure] and preventable
4  human suffering," as discussed above, the Court concludes "that the balance of hardships tips
5  decidedly in [petitioner's] favor."  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713
6  F.2d 1432, 1437 (9th Cir. 1983)).
7      The public interest also weighs in petitioner's favor.  "The public has a strong interest in
8  upholding procedural protections against unlawful detention, and the Ninth Circuit has
9  recognized that the costs to the public of immigration detention are staggering."  *Diaz*, 2025 WL
10 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)
11 (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,
12 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's
13 constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).
14     **d.  Remedy**
15     In conclusion, the Court finds that the requirements for issuing a preliminary injunction
16 are met.  Petitioner's immediate release is required to return him to the status quo ante—"the last
17 uncontested status which preceded the pending controversy."  *Pinchi*, 2025 WL 1853763, at *3;
18 *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10,
19 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025)
20 (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-
21 11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*,
22 No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).  Respondents
23 are ordered to release petitioner immediately.  Respondents may not re-detain petitioner unless
24 the government proves by clear and convincing evidence at a bond hearing before a neutral
25 decisionmaker that petitioner is a flight risk or danger to the community.
26 **V.     Conclusion and Order**
27     Accordingly, petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED.
28 Respondents are ORDERED to release petitioner immediately.  Respondents are ENJOINED

1  AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and
2  convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that
3  petitioner is a flight risk or danger to the community such that his physical custody is legally
4  justified.
5      The Court's October 16, 2025 minute order, Doc. 6, is VACATED.
6      The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts
7  regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.
8  2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.
9      Respondents may file an additional brief related to the merits of the petition within 30
10 days, and petitioner may file a reply brief within 15 days of respondents' brief.  Alternatively, the
11 parties may stipulate to a different briefing schedule or to submitting the petition on the merits
12 based on the current record.

IT IS SO ORDERED.

Dated:    November 4, 2025

_____
UNITED STATES DISTRICT JUDGE